DAVIS v. NEW YORK CENTRAL RAILROAD COMPANY.

1. RAILROADS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

A plaintiff in a case arising out of a collision at a railroad crossing is entitled to have issue of contributory negligence presented to jury, where the evidence is such that reasonable minds might draw differing inferences and defendant's negligence is admitted.

2. TRIAL—DIRECTED VERDICT—EVIDENCE.

Proofs offered for plaintiff must be construed as strongly as possible in his favor in determining whether or not a motion for directed verdict for defendant should be granted at the conclusion of plaintiff's proofs.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 7] 5A Am Jur, Automobiles and Highway Traffic § 714.
[2] 3 Am Jur, Appeal and Error § 886.
[3, 4] 5A Am Jur, Automobiles and Highway Traffic § 1028.
[5] 5A Am Jur, Automobiles and Highway Traffic §§ 377, 378.

3. Negligence—Question for Jury.

The question of negligence is ordinarily a question for the jury and not for the court, since it involves a determination of what would have been ordinary care under the circumstances and then the ascertainment of whether the person charged with negligence came up to that standard, usually a variable one.

4. Same—Undisputed Facts—Inferences.

Negligence cannot be conclusively established by a state of undisputed facts when fair-minded men may well differ as to the inferences to be drawn.

5. Railroads—Crossings—Due Care.

Special conditions may change the duty of one about to cross railroad tracks to look and listen for railroad trains from a standard of conduct to an element of care to be weighed by a jury.

6. Same—Contributory Negligence—Question of Law or Fact.

Whether the matter of contributory negligence of a motorist who collides with a railroad engine is a question of law for the court or one of fact for the jury depends upon the circumstances of the particular case.

7. Same—Automobiles—Contributory Negligence—Question for Jury.

Whether or not northbound plaintiff motorist in action against railroad was guilty of contributory negligence *held,* a question of fact for the jury, where evidence shows cars on siding at right obscured train, westbound at 6:40 p.m. in mid-November, that well-lighted area rendered it difficult to see headlight of engine, that crossing was protected by a simple wooden cross-arm, that plaintiff looked each way as car reached southernmost rail by switch track, defendant's unscheduled train was not then seen, and that engine bell was not ringing and its whistle was not blown.

Appeal from Eaton; McDonald (Archie D.), J. Submitted January 17, 1957. (Docket No. 77, Calendar No. 47,080.) Decided May 17, 1957.

Case by Leslie W. Davis against New York Central Railroad Company, a Michigan corporation, for damages resulting from collision at street cross-

ing. Directed verdict for defendant. Plaintiff appeals. Reversed and remanded.

*Kelly, Kelly & Kelly,* for plaintiff.

*McKone, Badgley, Domke & Kline,* for defendant.

CARR, J. While driving his automobile across the tracks of the defendant railroad company at Hall street in the city of Eaton Rapids, plaintiff was struck by a train operated by defendant in a westerly direction, and severely injured. The accident occurred on November 13, 1954, at approximately 6:40 p.m. The train in question was not a regularly scheduled one. Claiming that the accident and his injuries sustained therein resulted from negligence on the part of defendant, plaintiff brought this action for damages. The declaration alleged that the defendant's employees had negligently placed certain cars on a siding in such manner as to obstruct plaintiff's view to the east as he approached the crossing, that proper signals of the approach of the train were not given, and that said train was traveling at an excessive rate of speed. Plaintiff further averred that he exercised a reasonable and proper outlook for his own safety, and that he was not guilty of negligence contributing to the accident.

Defendant by answer denied negligence on its part and further asserted that plaintiff failed to make proper observations before attempting to cross the tracks and was for that reason guilty of contributory negligence. The case was duly brought on for trial before a jury. At the conclusion of plaintiff's proofs counsel for defendant moved for a directed verdict on the grounds, 1st, that plaintiff had failed to show any negligence on defendant's part, and, 2d, that under the record as it then stood plaintiff was

guilty of contributory negligence as a matter of law. The trial judge inferentially assumed that a question of fact for the jury was presented insofar as the first ground of the motion was concerned, but concluded that the plaintiff was guilty of contributory negligence. The motion was accordingly granted. Thereupon plaintiff moved for a new trial, which was denied, the trial judge in his opinion discussing the testimony at some length and concluding that plaintiff had failed to establish reasonable care on his part as he approached the tracks of the defendant. From the judgment entered on the directed verdict plaintiff has appealed. The question for consideration is whether he was guilty of contributory negligence as a matter of law.

Plaintiff was driving on Hall street in a northerly direction at the time of the accident. The tracks of the defendant intersect said street at an angle, the crossing being marked with a wooden crossarm sign. At Main street, approximately 360 feet east of Hall street, crossing bells and flashing lights were maintained by defendant to indicate the approach of a train. Farther to the east is Jackson street, approximately 960 feet distant, its location being significant solely on the ground that witnesses for plaintiff testified that they heard the whistle blown in proximity to Jackson street as the train approached.

As a witness in his own behalf plaintiff testified that he had lived in Eaton Rapids for 22 years, that he operated a milk route, and that he was familiar with the crossing where the accident occurred. He claimed further that he was familiar with the schedule of regular trains passing through Eaton Rapids, and that on the occasion in question he was aware that no regular train was scheduled to pass. He also testified, as did other witnesses, that switch-

ing operations of freight cars were protected by a flagman at the Hall street crossing.

On his direct examination plaintiff testified to the presence of freight cars on the siding south of the main track, and that those on the east side of Hall street, from which direction defendant's train approached, interfered with his view in that direction. It was his claim that he knew that a train might pass through the city at any time, that he looked in both directions alternately as he approached the crossing, that he listened for signals, and that he heard no bell or whistle of a train coming from the east. It was his claim also that he could have heard a bell or whistle if it had been sounded. His testimony indicated that the crossing was well lighted, and it is suggested that this fact is important as bearing on the question whether plaintiff was negligent in failing to notice beams from the headlights of the locomotive.

Plaintiff stated that as the front end of his car entered on the south rail of the sidetrack he could see approximately 45 feet to the east along defendant's main track, that he looked at that time, and that there was no train in sight. He insisted that he heard no bell or whistle at that time, and that he could have heard them if such signals had been given. He testified that, having taken his view to the east, he then looked to the west to see if there was possible danger from that direction. He claimed that he was struck by defendant's locomotive as he was completing such view. He estimated his speed at the time he was struck at approximately 8 miles an hour. On his cross-examination plaintiff indicated that he could not have heard the warning bell at Main street if the wind had been against him, that is, blowing from west to east. He admitted also that he had the windows of his car closed. It should be noted that on his cross-examination plain-

tiff· was apparently referring to the warning bell at·Main street, rather than.to the bell.on defendant's locomotive which the answer to the declaration alleged was ringing.

Plaintiff's witness Roland White, who was standing outside his store on Main street as the train passed, testified that he heard the whistle blown "in the vicinity east of Jackson street," that he did not hear it again, and that as the train passed west toward Hall street he did not hear any bell on the locomotive. He claimed that he could have heard it had it been rung. The testimony of Mrs. White corroborated that of her husband. Other witnesses called by plaintiff testified as to the regular train operations in and through Eaton Rapids. The physical situation involved in the case is indicated by exhibits that have been submitted to this Court with the record.

Do the proofs in the case, and particularly the testimony of the plaintiff, establish that he was guilty of contributory negligence as a matter of law? If the issue was one concerning which opinions might properly have differed he was entitled to have his case submitted to the jury on the basis of the proofs as they stood at the time the motion for a directed verdict was made. In considering the matter we must necessarily have in mind the general rule that the proofs offered by plaintiff must be construed as strongly as possible in his favor. _Thompson_ v. _Michigan Cab Co.,_ 279 Mich 370; _Grover_ v. _Simons,_ 342 Mich 480. The rule is applicable, notwithstanding that certain inconsistencies and contradictions may be deemed to exist in plaintiff's testimony. _Yampolsky_ v. _Smith,_ 320 Mich 647.

In _Thompson_ v. _Michigan Cab Co., supra,_ which was an action to recover damages for injuries sustained in an intersection accident, it was claimed on behalf of defendant that the driver of plaintiff's

car was guilty of contributory negligence as a matter
of law. After referring to the testimony, it was
said, in part (p 373):

"Under the legitimate inferences from all of plain-
tiff's testimony taken in its most favorable light
(*Loveland* v. *Nelson*, 235 Mich 623), did Benjamin
exercise that degree of reasonable care that would
be exercised by a person of ordinary prudence under
all the existing circumstances, in view of the prob-
able danger of injury? *Detroit & Milwaukee R. Co.*
v. *Van Steinburg*, 17 Mich 99, 118.

"It is an impossibility to lay down precise rules
by which we may measure all acts of contributory
negligence. Some cases must, of necessity, stand
or fall on their own facts. What one does or fails
to do as relates to the circumstances under which he
acts is the test to be applied. *Flynn* v. *Kramer*, 271
Mich 500, 505. * * *

"Were Benjamin's actions those of an ordinary
careful and prudent man under like circumstances?
Can the minds of reasonable men differ in answering
this question? If so, the evidence should be sub-
mitted to a jury. *Adams* v. *Canfield*, 263 Mich 666.
In cases of this character, it should be made very
plain by the proofs that the conduct of plaintiff's
driver was negligent before he should be declared to
be guilty of contributory negligence as a matter of
law. *Frary* v. *Grand Rapids Taxicab Co.*, 227 Mich
445."

In *Detroit & Milwaukee R. Co.* v. *Van Stein-
burg*, cited by the Court in the language above
quoted, Chief Justice Cooley pointed out that as a
general rule the question of negligence is one of
fact and not of law. In discussing the propriety of
a directed verdict generally, it was said, in part
(pp 120–123):

"The case, however, must be a very clear one which
would justify the court in taking upon itself this
responsibility. For, when the judge decides that a

want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that, if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury. The judge, it is said in one case, is not bound to submit to a jury the propriety of a particular course, when it is perfectly notorious that all prudent men conduct their own affairs differently. The uniformity of the conduct of business men becomes a rule of law.

"But, while there is any uncertainty, it remains a matter of fact for the consideration of the jury: *Briggs* v. *Taylor,* 28 Vt 180, 183. The difficulty in these cases of negligent injuries is, that it very seldom happens that injuries are repeated under the same circumstances; and, therefore, no common standard of conduct by prudent men becomes fixed or known. In *North Pennsylvania R. Co.* v. *Heileman,* 49 Pa 60, 63, it is said: 'That what constitutes negligence in a particular case is generally a question for the jury, and not for the court, is undoubtedly true, because negligence is want of ordinary care. To determine whether there has been any, involves, therefore, 2 inquiries: *First,* What would have been ordinary care under the circumstances;

and, *second,* Whether the conduct of the person charged with negligence came up to that standard. In most cases the standard is variable, and it must be found by a jury.' * * *

"It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty. When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence can not be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they can not be decided upon by the court. Negligence can not be conclusively established by a state of facts upon which fair-minded men may well differ."

The test to be applied in a case of this nature in determining whether a verdict should be directed, as declared in the above cases, was approved, and said decisions were cited, in *Stephens* v. *Koprowski,* 295 Mich 213.

In *Reedy* v. *Goodin,* 285 Mich 614, 620, this Court affirmed a judgment for the plaintiff, saying:

"Contributory negligence is ordinarily a question of fact for the jury, if there is one, unless the evidence so plainly and clearly establishes such contributory negligence that no reasonable man could come to any other conclusion. *Frary* v. *Grand Rapids Taxicab Co.,* 227 Mich 445. If plaintiff was in the exercise of ordinary care under all of the circumstances, he was not guilty of contributory negligence; and what is ordinary care is usually a question of fact. It is the care which an ordinarily prudent person would exercise under the same or similar circumstances."

Because of the nature of the facts involved, the case of *Rogers* v. *Grand Trunk Western R. Co.*, 289 Mich 397, is of special interest. There plaintiff sued for damages because of injuries sustained when the automobile in which he was riding was struck by defendant's locomotive at a crossing. The trial judge directed a verdict for defendant on the ground of contributory negligence on plaintiff's part. It was undisputed that the latter was familar with the crossing where the accident occurred. There was testimony indicating that his view of defendant's approaching train was, in part, obscured by coaches standing on the track and, also, by freight cars standing immediately west of the crossing. As in the case at bar, it was claimed that the defendant failed to give proper signals of the approach of its locomotive. In view of the special circumstances involved the Court concluded that the matter of contributory negligence presented a question of fact for the jury. The judgment was accordingly reversed and the case remanded for a new trial. The conclusions reached were summarized in the syllabi, as follows:

"Special conditions may change the duty of one about to cross railroad tracks to look and listen for railroad trains from a standard of conduct to an element of care to be weighed by a jury." (Syllabus 3.)

"Whether the matter of contributory negligence of a motorist who collides with a switch engine is a question of law for the court or one of fact for the jury depends upon the circumstances of the particular case." (Syllabus 4.)

"The question of plaintiff's contributory negligence should be submitted to the jury when the testimony is conflicting or where candid and intelligent men might reach different conclusions upon the question." (Syllabus 5.)

"Even if there were no conflict in the testimony, if different inferences might reasonably be drawn as to its import, the question as to whether there was negligence would still be for the jury." (Syllabus 6.)

In accord with the foregoing decisions is *Vukich* v. *City of Detroit,* 325 Mich. 644. There the trial judge directed a verdict for defendant, apparently basing such action on his conclusions as to plaintiff's credibility and, also, on the physical facts disclosed by the proofs. In reversing the judgment and ordering a new trial, it was said (pp 647, 648) :

"The facts and all inferences therefrom must be construed most favorably for plaintiff on appeal from a directed verdict, *Dasovich* v. *Longacre,* 324 Mich. 62. Although we may be in accord with the trial judge as to the improbability of the accident occurring as testified to by plaintiff, this is primarily a question of fact for the jury, and there may be a possibility of reconciling the physical facts with the testimony of plaintiff, considered in the light most favorable to him. Defendant also contends that the verdict was properly directed in its favor as plaintiff was guilty of contributory negligence as a matter of law in not making a proper observation or judgment as to his ability to cross the intersection ahead of the bus. Defendant mainly relies on the statements of law made in the recent case of *MacDonald* v. *Skornia,* 322 Mich. 370, and the cases cited therein, in which the Court fully reviewed the applicable law. However, the testimony of Vukich, construed most favorably for him, distinguishes the facts of the instant case from the facts of the above cases. The trial judge did not pass on this question in directing the verdict. We are unable to say on this record that the plaintiff was guilty of contributory negligence as a matter of law.

"Defendant also relies on the impossibility of the accident occurring as testified to by the plaintiff. These are proper arguments to the jury, not to the court. A discussion of the physical facts would not

be of any benefit inasmuch as a showing of the possibility, even though not a probability, that the accident occurred in the manner described by Vukich is sufficient to raise a question of fact for the jury. *Wright* v. *Barron*, 318 Mich 409."

See, also, *Greenberg* v. *Greenberg*, 337 Mich 390.

Under the proofs in the case at bar opinions may well differ, not merely as to the facts but as to the inferences to be drawn from the facts. Whether plaintiff failed to exercise proper care for his own safety involves consideration of the circumstances attending the accident, particularly with reference to the physical situation. We conclude that the issues in the case should have been submitted to the jury.

The judgment is reversed and the cause remanded for a new trial.

DETHMERS, C. J., and SHARPE, EDWARDS, and KELLY, JJ., concurred with CARR, J.

BLACK, J. (*concurring*). In this negligence case the trial judge directed a verdict for defendant. He said plaintiff was guilty of contributory negligence. The question, then, brought here by plaintiff, is whether the judge was right in assuming to determine the issue himself.

The problem of contributory negligence is usually complicated by the necessity of taking into account 2 sets of causally-connected circumstances affecting conduct of different persons—in this case the plaintiff motorist and the defendant's engineer. Whether plaintiff was contributorily negligent depends, in part, on what if anything he had a right to expect of the engineer. This requisite of dual view of the action of 2 persons—"if the danger depends at all upon the action of any other person"—, when a court undertakes consideration of a motion for instructed

verdict aimed at contributory negligence, is the essence of and reason for our *general* rule that "the question of negligence is a question of fact and not of law." *(Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 118, 119.)

Our difficulty in recent years* is due, I think, to a want of reflective thought upon the fenced-in position the moving party occupies when he asks that the court decide the issue of contributory negligence to exclusion of the jury. Actually, and when a defendant moves that the court so decide, he concedes for the purpose of his motion all that his opponent may rightfully claim from the evidence *(Van Steinburg,* p 118 of report). So, and in the case before us, he admits for such purpose the excessive and unexpected speed of the football special as testified by plaintiff's witnesses; the omission of a warning whistle and bell as testified; the unscheduled, untimely and unusual appearance of the special; the obstruction of plaintiff's view by standing boxcars; the customary appearance of a flagman at the crossing when switching of cars theretofore took place; the absence of a flagman on the occasion in question, and verity of plaintiff's testimony to the degree of care exercised for his own safety. If this be right, and our earlier decisions headed by *Van Steinburg* repeat the test with steady regularity, it is in order to say that this case of Davis marks end of an errant cycle and beginning of a new one. The case must now, as in the days of our Court from COOLEY through FELLOWS, be a very clear one which will justify the court in taking upon itself the responsibility of instructing a verdict on assigned ground of contributory negligence.

Last September, 4 present members of this Court agreed that:

---

* See *Clark* v. *Shefferly,* 346 Mich 332 at page 335; and *Patterson* v. *Pennsylvania R. Co.* (CCA), 238 F2d 645, 649.

"*Van Steinburg* gives us the very cynosure to the law of contributory negligence as originally adopted in this State. When we return to its course, much of our present difficulty with questions of law and fact assigned to contributory negligence will automatically disappear. Probably no Michigan case has been cited more universally, and followed with greater reverence, by the courts of the respective States and the courts of the United States, than *Van Steinburg.* It will do us no harm to partake again of its nourishment." (*Clark* v. *Shefferly, supra,* 337.)*

As a Court, and by majority decision in this case, we have now partaken. Those who propose and oppose directed verdicts in negligence cases may henceforth refer to *Van Steinburg* for reliable guidance.

I concur in reversal.

Smith and Voelker, JJ., concurred with Black, J.

---

* Since *Clark* was decided *Van Steinburg* has been cited in *Ohman* v. *Vandawater,* 347 Mich 112; *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Barron* v. *City of Detroit,* 348 Mich 213; and *Hopkins* v. *Lake,* 348 Mich 382, handed down herewith. During the same period, the court of appeals of the 6th circuit has joined *(Patterson* v. *Pennsylvania R. Co., supra).*